IN THE SUPREME COURT OF THE STATE OF IDAHO
Docket No. 40738

| | | |
|---|---|---|
| DAFCO LLC, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | Boise, May 2014 Term |
| | ) | |
| v. | ) | 2014 Opinion No. 68 |
| | ) | |
| STEWART TITLE GUARANTY | ) | Filed: July 31, 2014 |
| COMPANY and AMERITITLE, INC., | ) | |
| | ) | Stephen W. Kenyon, Clerk |
| Defendants-Respondents. | ) | |
| _____ | ) | |

Appeal from the District Court of the Seventh Judicial District of the State of Idaho, Bonneville County.  Hon. Dane H. Watkins, Jr., District Judge.

The judgment of the district court is affirmed.

Petersen Moss Hall & Olsen, Idaho Falls, for appellant. Stephen D. Hall argued.

Spink Butler, Boise, for respondents. Michael T. Spink argued.

_____

J. JONES, Justice.

DAFCO LLC sought recovery against Stewart Title Guaranty Co. on a lender's title insurance policy and against AmeriTitle, Inc., the closing agent for the lending transaction, claiming that it sustained injury as a result of a defective deed of trust. The district court granted summary judgment in favor of Stewart and AmeriTitle, resulting in this appeal by DAFCO. We affirm.

I.
BACKGROUND

In March 7, 2008, Joshua Jarvis acquired real property ("the Property") in Bonneville County. The warranty deed conveyed the Property to Joshua as "a married man dealing with his sole and separate property," but this characterization was incorrect. The Property was actually community property—when Joshua acquired the Property, he was married to Rebecca Jarvis. Intending to build a spec home on the Property, Joshua arranged a $268,000 loan from Snake River Funding, Inc., to be secured by a deed of trust on the Property. AmeriTitle, Inc., was the escrow

1

agent for the closing between Jarvis and Snake River. The closing instructions submitted to AmeriTitle provided that AmeriTitle was to "prepare the: Promissory Note, Deed of Trust, Assignment of Deed of Trust from Snake River Funding, Inc. to D.A.F.C.O. LLC[,] Authorization to Reconvey, And any other necessary documents." At the closing, which occurred on March 13, 2008, Joshua signed the deed of trust. There was no signature line for Rebecca and she did not join in the execution of the document. The deed of trust was recorded in Bonneville County on March 18 and Stewart Title Guaranty Co. issued a $268,000 title insurance policy to Snake River. On April 17, 2008, Snake River assigned its rights under the deed of trust to DAFCO LLC.

Joshua and Rebecca then borrowed money from New Phase Investments, LLC, and executed multiple deeds of trust in its favor. Shortly thereafter, Joshua and Rebecca defaulted on their loan agreements with DAFCO and New Phase. In November 2008, Snake River sent a "Notice of Claim" to Stewart seeking payment under the title policy based on an alleged infirmity resulting from Rebecca's failure to sign the trust deed. However, Stewart refused to pay. In January 2010, Snake River and DAFCO filed a complaint against Stewart and then filed a second amended complaint in March 2011, which added a claim against AmeriTitle. The second amended complaint alleged three causes of action. First, Snake River and DAFCO claimed that Stewart breached its agreement with Snake River by failing to pay DAFCO and Snake River "as per the title insurance policy" and by "[f]ailing to diligently pursue reasonable actions to quiet title" in DAFCO and Snake River. Second, Snake River and DAFCO claimed that the actions of Stewart and AmeriTitle "created an express or implied contract to obtain the joinder of Mrs. Jarvis to provide the promised security to Snake River or obtain a release or disclaimer of her interests." DAFCO and Snake River contended that Stewart and AmeriTitle breached this contract "by failing to obtain the joinder of Mrs. Jarvis in the promissory note or deed of trust in favor of Snake River." Third, Snake River and DAFCO claimed that Stewart and AmeriTitle were "estopped from claiming that Snake River's Deed of Trust" was "not defective because of Mrs. Jarvis's failure to join in the transaction."

In a separate action, New Phase filed a complaint to foreclose its deeds of trust and argued that its interests were superior to DAFCO's interest in the Property because DAFCO's deed of trust was void under I.C. § 32-912, which requires both spouses to sign an encumbrance of community property. *New Phase Investments v. Jarvis*, 153 Idaho 207, 209, 280 P.3d 710, 712 (2012). Stewart, on DAFCO's behalf, filed a counterclaim, cross-claim, and third-party claim for foreclosure of its

2

deed of trust, arguing that DAFCO's interest was superior to New Phase's interests because DAFCO's deed of trust was recorded first. *Id.* Ultimately, this Court held in the *New Phase* case that DAFCO's deed of trust was only voidable, not void, and that New Phase, a third-party creditor, could not invoke I.C. § 32-912 for its benefit. *Id.* at 211, 280 P.3d at 714. We explained that "DAFCO's deed of trust is valid, not having been challenged by Rebecca. There is no dispute but that DAFCO's trust deed was recorded prior to any of New Phase's. Being the first-recorded encumbrance, DAFCO's trust deed has first priority." *Id.*

After the Court issued its opinion in *New Phase*, DAFCO and Snake River resumed litigation against Stewart and AmeriTitle. DAFCO and Snake River's legal counsel sought to withdraw, claiming that a conflict of interest prevented further joint representation of both parties. After obtaining new counsel, Snake River moved to dismiss its claims against Stewart and AmeriTitle and filed a motion to dismiss Snake River as a plaintiff, which was granted.

On October 11, 2012, Stewart and AmeriTitle moved for summary judgment against DAFCO and after rescheduling, the hearing was ultimately set for December 12, 2012. On December 5, 2012, "after close of business and after Stewart and AmeriTitle's reply brief on their Motions for Summary Judgment would otherwise be due," DAFCO filed a response to the motions for summary judgment and a motion to file a third amended complaint.

At the conclusion of the hearing, the district court granted the motions for summary judgment and denied the motion to amend, announcing the rulings in open court. After the district court entered final judgment, DAFCO timely appealed.

## II.
## ISSUES ON APPEAL

I.    Did the district court err when it granted Stewart Title's motion for summary judgment?

II.   Did the district court err when it granted AmeriTitle's motion for summary judgment?

III.  Did the district court err when it denied DAFCO's motion to file a third amended complaint?

IV.   Is any party to this appeal entitled to an award of attorney fees?

## III.
## STANDARD OF REVIEW

When reviewing a district court's grant of a motion for summary judgment, "this Court applies the same standard of review used by the district court in ruling on the motion." *Mortensen*

*v. Stewart Title Guar. Co.*, 149 Idaho 437, 441, 235 P.3d 387, 391 (2010). The Court reviews a district court's decision to grant or deny a motion to amend for abuse of discretion. *Black Canyon Racquetball Club, Inc. v. Idaho First Nat. Bank, N.A.*, 119 Idaho 171, 175, 804 P.2d 900, 904 (1991).

**IV.**
**ANALYSIS**

**A.       Stewart's Motion for Summary Judgment**

DAFCO contends that the district court should not have granted Stewart's motion for summary judgment because there were genuine issues of material fact as to whether Stewart "fulfilled its duty to act in good faith and to deal fairly with the insured . . . ." DAFCO also attempted to add a breach of good faith and fair dealing claim in its third amended complaint, and, on appeal, DAFCO argues that the district court erred when it denied the motion to amend. This claim, whether it was properly raised below or on appeal, is based upon DAFCO's contention that Stewart should have paid the face amount of the policy at the time the defect in the deed of trust was discovered. Its argument seems to be that it was deprived of the benefit of the policy provision for payment based on a title defect. The district court, however, was unimpressed with this argument—it noted that Stewart complied with its obligations under the policy when it pursued an alternate means of remediation. Section 5(a) of the policy provides:

> [Stewart] shall have the right, in addition to the options [to pay or otherwise settle claims] in Section 7 . . . at its own cost, to institute and prosecute any action or proceeding or to do any other act that in its opinion may be necessary or desirable to establish the Title or the lien of the Insured Mortgage, as Insured, or to prevent or reduce loss or damage to the Insured. . . . If [Stewart] exercises its rights under this subsection, it must do so diligently.

Section 5(c) provides:

> Whenever [Stewart] brings an action or asserts a defense as required or permitted by this policy, [Stewart] may pursue the litigation to a final determination by a court of competent jurisdiction, and it expressly reserves the right, in its sole discretion, to appeal any adverse judgment or order.

Section 9(a) provides:

> If [Stewart] establishes the Title, or removes the alleged defect, lien, or encumbrance . . . or establishes the lien of the Insured Mortgage . . . in a reasonably diligent manner by any method, including litigation and the completion of any appeals, it shall have fully performed its obligation with respect to that matter and shall not be liable for any loss or damage caused to the Insured.

4

This is a contractual alternative to payment of an insured's claim that was available to Stewart at its discretion.

The district court observed that Stewart had properly performed this alternate remedial avenue and gotten the desired results for DAFCO and that Stewart had performed in as expeditious manner as was possible under the circumstances. In oral argument, DAFCO itself admitted that Stewart had the right to pursue this contractual alternative and that Stewart did so in a reasonably diligent manner. Because Stewart acted consistently with the policy in a reasonably diligent manner, it did not breach any contractual duty under the policy, including any duty of good faith and fair dealing. *See Idaho First Nat. Bank v. Bliss Valley Foods, Inc.*, 121 Idaho 266, 288, 824 P.2d 841, 863 (1991) ("[T]he implied covenant of good faith and fair dealing cannot be inconsistent with the agreement executed by the parties.").

## B.    AmeriTitle's Motion for Summary Judgment

DAFCO also argues that the district court erred when it granted AmeriTitle's motion for summary judgment. "As to AmeriTitle," the district court held "that Stewart Title was the insurer and not AmeriTitle. AmeriTitle was acting as Stewart Title's agent for closing, and the Court finds no obligation under the policy for AmeriTitle. Hence, claims regarding the breach [of] contract can't survive motion for summary judgment." The district court explained that "[t]here was no contract, either express or implied, between [AmeriTitle] and DAFCO that required . . . . AmeriTitle to obtain Mrs. Jarvis' signature on the note or deed of trust. Just simply doesn't require that. The only contract is the policy issued by Stewart Title . . . ." The district court stated that "given the policy and the closing instructions, [AmeriTitle] acted as the closing representative, essentially a scrivener, and there was no contractual obligation to obtain that signature. DAFCO lacked privity." As a result, the district court found that there was "no other appropriate result other than to grant summary judgment on behalf of AmeriTitle on those counts."

"Privity" is "[t]he connection or relationship between two parties, each having a legally recognized interest in the same subject" and "privity of contract" is "[t]he relationship between the parties to a contract, allowing them to sue each other but preventing a third party from doing so . . . ." PRIVITY, Black's Law Dictionary (9th ed. 2009). "It is axiomatic in the law of contract that a person not in privity cannot sue on a contract. Privity refers to those who exchange the [contractual] promissory words or those to whom the promissory words are directed." *Wing v.*

5

*Martin*, 107 Idaho 267, 272, 688 P.2d 1172, 1177 (1984) (quoting Caleamari and Perillo, Contracts § 17–1 (2d ed. 1977)) (quotation marks omitted). "A party must look to that person with whom he is in a direct contractual relationship for relief, in the event that his expectations under the contract are not met." *Id.*

DAFCO states that AmeriTitle "issued the commitment for title insurance. It prepared many of the essential documents for this transaction, including the deed of trust, the note, the assignment of the deed of trust to DAFCO, and the closing instructions." AmeriTitle "even acted as agent for Stewart Title in issuing the title policy in accordance with its title commitment and the closing documents." DAFCO argues that "AmeriTitle was fully aware that DAFCO was to be assigned the deed of trust and note." Because of this, DAFCO contends, "there is at the very least a question of fact as to whether there was privity of contract between AmeriTitle and DAFCO as to the closing escrow agreements, including the Closing Instructions." AmeriTitle argues that DAFCO and AmeriTitle were not in privity because DAFCO was not a signatory or assignee of the closing instructions and because DAFCO was not a third party beneficiary of the closing instructions.

As a preliminary matter, DAFCO argues that AmeriTitle raised the issue of privity "in its reply brief filed only one day before the hearing on the motion."[1] According to DAFCO, the district court therefore "lacked complete briefing on that issue, and its efforts to bring this matter to a conclusion overlooked the current status of the law regarding privity defenses." Yet, if the district court lacked complete briefing, the fault was DAFCO's alone. In AmeriTitle's initial brief in support of its motion for summary judgment, it stated that

> even if a contractual obligation was created (which it was not), Snake River Funding, as the only Plaintiff that was a party to the escrow closing, is the only Plaintiff that could possibly claim privity of contract with AmeriTitle. DAFCO . . . simply lacks the ability to claim the contractual privity with AmeriTitle that is requisite to maintain the second and third causes of action.

In the conclusion of that same brief, AmeriTitle stated that "only Snake River Funding could possibly claim contractual privity with AmeriTitle for the escrow services performed by AmeriTitle, so the second and third causes of action must be dismissed to the extent they are brought by DAFCO." In its response brief, DAFCO made no mention of privity.

---

[1] AmeriTitle explains that its late reply brief was due to DAFCO's own disregard for court deadlines. It stated that "DAFCO's incredibly late response brief was filed on the due date of the AmeriTitle's reply brief making AmeriTitle's reply brief necessarily late."

In support of its argument that it was in privity with AmeriTitle, DAFCO states only that "[a]s long ago as 1990, as general a treatise . . . as Black[']s Law Dictionary was able to say" that "'the absence of privity as a defense in actions for damages in contract and tort actions is generally no longer viable'" due to changes in state law.

> We will not consider an issue not "supported by argument and authority in the opening brief." *Jorgensen v. Coppedge*, 145 Idaho 524, 528, 181 P.3d 450, 454 (2008); *see also* Idaho App. R. 35(a)(6) ("The argument shall contain the contentions of the appellant with respect to the issues presented on appeal, the reasons therefor, with citations to authorities, statutes and parts of the transcript and the record relied upon."). Regardless of whether an issue is explicitly set forth in the party's brief as one of the issues on appeal, if the issue is only mentioned in passing and not supported by any cogent argument or authority, it cannot be considered by this Court.

*Bach v. Bagley*, 148 Idaho 784, 790, 229 P.3d 1146, 1152 (2010). Because DAFCO has not provided authority in support of its argument as to its privity with AmeriTitle, we will not consider the issue.

### C.  DAFCO's Motion to File Third Amended Complaint

After Stewart and AmeriTitle moved for summary judgment, DAFCO moved to file a third amended complaint to add three claims. DAFCO sought (1) to add a claim for the breach of the duty of good faith and fair dealing against "Stewart and AmeriTitle for the extreme delays in responding to and acting upon claims covered under the title policy. . . ."; (2) to add claims for negligence and negligence per se against AmeriTitle and Stewart Title; and (3) to make Snake River a defendant rather than a plaintiff. The district court denied this motion, which DAFCO contends was in error.

Under I.R.C.P. 15(a) "a party may amend his pleading once as a matter of course at any time before a responsive pleading is served . . . ." I.R.C.P. 15(a). Once an answer has been filed, however, "a party may amend a pleading only by leave of court . . . ." *Id.*

> ["]In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendment previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be 'freely given.'"

*Smith v. Great Basin Grain Co.*, 98 Idaho 266, 272, 561 P.2d 1299, 1305 (1977) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)). "A court should liberally grant a motion to amend a complaint." *Iron Eagle Development, LLC v. Quality Design Systems, Inc.*, 138 Idaho 487, 492,

7

65 P.3d 509, 514 (2003). "The purpose behind allowing a party to amend its complaint is so all claims will be decided on their merits and to provide notice of the claim and the facts at issue." *Id.* "The grant or denial of leave to amend after a responsive pleading has been filed is a matter that is within the discretion of the trial court and is subject to reversal on appeal only for an abuse of that discretion." *Black Canyon Racquetball Club, Inc. v. Idaho First Nat. Bank, N.A.*, 119 Idaho 171, 175, 804 P.2d 900, 904 (1991).

> The test for whether a trial court has abused its discretion is three-fold: (1) whether the trial court correctly perceived the issue as one of discretion; (2) whether the trial court acted within the outer boundaries of its discretion and consistently with the legal standards applicable to the specific choices available to it; and (3) whether the trial court reached its decision by an exercise of reason.

*Burgess v. Salmon River Canal Co., Ltd.*, 127 Idaho 565, 573, 903 P.2d 730, 738 (1995).

Here, the district court recognized that the decision whether to grant the motion to amend was within its discretion—it stated that "[t]he decision to grant or refuse permission to amend is left to the sound discretion of the court . . . ." Thus, the issue here is whether the district court acted within the outer boundaries of its discretion and whether it reached its decision through an exercise of reason. A district court acts within the outer boundaries of its discretion "by correctly stating the standard" on which its decision must be made. *Crowley v. Critchfield*, 145 Idaho 509, 513, 181 P.3d 435, 439 (2007). The Court reviews the process the district court used to reach its decision rather than the decision itself. "[W]here the trial court has exercised such discretion after a careful consideration of the relevant factual circumstances and principles of law, and without arbitrary disregard for those facts and principles of justice, [the Court] will not disturb that action." *Lisher v. Krasselt*, 96 Idaho 854, 857, 538 P.2d 783, 786 (1975). Because this is a process oriented review, if a district court fails to enumerate its reasons for a discretionary decision, and the reasons are not obvious from the record, the Court will remand the case. *Quick v. Crane*, 111 Idaho 759, 772–73, 727 P.2d 1187, 1200–01 (1986).

DAFCO argues that the district court did not reach its decision to deny the motion to amend by an exercise of reason because it "fail[ed] to address the specific prejudice" that AmeriTitle or Stewart would suffer as a result of permitting the amendment. According to DAFCO, "[t]he prejudice focused on by the trial court seems to be exclusively the prejudice to the trial court because of the application of the Supreme Court guidelines on the resolution of cases, not on the prejudice or interests of justice of the parties." DAFCO also argues that the

8

district court abused its discretion because it failed to consider the merits of the proposed amendments. AmeriTitle and Stewart Title contend that the district court acted within its discretion because DAFCO failed to meet various deadlines imposed by the district court and these "numerous blown deadlines" resulted in "delay and prejudice . . . ."

When the district court denied DAFCO's motion to amend, it observed:

[t]here have been two previous amendments in this case, and the Court has set forth the history and notes that it's been lengthy. The Court understands the age of the case. The parties have had multiple years to prepare the posture of the case, and there is nothing that the Supreme Court did that created the conflict of former counsel.

The district court stated "in its view[,] and the pressures it feels from its case management and calendar and the guidelines set forth by the Supreme Court[,] that it can't go backwards." The district court found "that any prejudice in this case would exceed any justification to allow the amendment."

Timeliness alone is not a sufficient reason to deny a motion to amend. "The time between filing the original complaint and the amended complaint is not decisive." *Carl H. Christensen Family Trust v. Christensen*, 133 Idaho 866, 871, 993 P.2d 1197, 1202 (1999). Rather, "timeliness is important in view of the *Foman* factors such as undue delay, bad faith, and prejudice to the opponent." *Id.* For example, in *Clark v. Olsen*, the district court abused its discretion by denying the plaintiff's motion to amend without a justifying reason, even though seven years separated the original and amended complaints and the defendants had moved for summary judgment prior to the motion to amend. 110 Idaho 323, 324–26, 715 P.2d 993, 994–96 (1986).

Thus, other factors must combine with timeliness to justify denying a motion to amend. Appropriate factors to consider include whether the proposed amendment would delay upcoming hearings or trial, whether the motion to amend comes after court-imposed deadlines have passed, and whether substantial work has already been completed. *See, e.g., Weitz v. Green*, 148 Idaho 851, 858, 230 P.3d 743, 750 (2010) (holding that the district court did not abuse its discretion when it denied a motion to amend filed "well over a year" after the initial complaint because the amendment "would require additional evidence and witness gathering," and the facts alleged by the movant would not establish the proposed amended claim); *Hinkle v. Winey*, 126 Idaho 993, 997, 895 P.2d 594, 598 (Ct. App. 1995) (holding that the district court did not abuse its

discretion in denying a motion to amend when the proposed amendment was based on facts arising a year or more after the facts giving rise to the original complaint and allowing the amendment "almost certainly" would have required "a delay of the trial"). For example, in *Maroun v. Wyreless Systems, Inc.*, the plaintiff filed motions to amend several months after the deadline for filing motion to amend pleadings had passed. 141 Idaho 604, 613, 114 P.3d 974, 983 (2005). There, "the district court stated: 'We are now two years into this case, the time to amend pleadings has passed, and two discovery deadlines have expired. It is now simply too late to further amend the substance of the pleadings . . . ." *Id.* Furthermore, it was "clear from the judge's comments and from the record that an extended period of time had passed" and the plaintiff had already been "granted leave to amend his complaint on at least two prior occasions during the course of [the] litigation." *Id.* As a result, the Court held that "[t]he district court sufficiently articulated the prejudice to the defendants and did not abuse its discretion in denying the motion to amend." *Id.*

Here, the district court acted within the outer bounds of its discretion because it relied on the correct standards for evaluating a motion to amend. Citing *Black Canyon*, the district court noted that "[i]f an amended pleading does not set out a valid claim or if the opposing party would be prejudiced by the delay in adding a new claim or if the opposing party has [an] available defense, such as statute of limitations, it is not an abuse of discretion for the trial court to deny the motion to file an amended complaint." In its analysis, the district court looked "to whether the opposing party would be prejudiced. . . . , whether the pleadings set forth valid claim[s], and if the opposing party has an available defense."

The district court also noted that at the time of hearing on the motion to amend, the case was nearly three years old and DAFCO had previously been granted leave to amend. Furthermore, the district court stated that

> trial is set in March, and the extending of that has taken place three times. Plaintiff's motion to amend the complaint was set for hearing last week, but there was a motion to shorten time that was filed, and we've heard argument today on it. The Court notes that that – had we not heard the motion today, it would have been after discovery and after the deadlines provided by the Court.

Also, the district court found during the same proceeding that DAFCO had no contractual basis for asserting a good faith and fair dealing claim.

The district court then applied these facts to the standards provided by case law to consider

whether to grant or deny the motion to amend. Ultimately, the district court decided to deny the motion due to the prejudice that AmeriTitle and Stewart would suffer if the motion were granted. Thus, the district court reached its decision to deny DAFCO's motion to amend through an exercise of reason because it denied the motion after carefully reviewing the relevant facts and case law. Since the prejudice to AmeriTitle and Stewart was sufficient to deny the motion to amend, the district court was not required to consider the merits of the proposed non-contract claims.

### D.    Attorney Fees

Stewart and AmeriTitle argue that they are entitled to their costs and attorney fees under the Closing Instructions, I.C. § 12-120(3), and I.C. § 12-121. DAFCO argues that it is entitled to its fees under I.C. § 12-120(3).

Under Idaho Code § 12-120(3),

In any civil action to recover on an open account, account stated, note, bill, negotiable instrument, guaranty, or contract relating to the purchase or sale of goods, wares, merchandise, or services and in any commercial transaction unless otherwise provided by law, the prevailing party shall be allowed a reasonable attorney's fee to be set by the court, to be taxed and collected as costs.

The term "commercial transaction" is defined to mean all transactions except transactions for personal or household purposes. The term "party" is defined to mean any person, partnership, corporation, association, private organization, the state of Idaho or political subdivision thereof.

I.C. § 12-120(3).

While it appears this case involved a transaction of a commercial nature, it is not clear that a commercial transaction took place between DAFCO and either Stewart or AmeriTitle. The policy was issued to Snake River, rather than DAFCO. DAFCO did succeed to Snake River's status as insured under the terms of the policy but there was no transaction directly between DAFCO and Stewart. Neither was DAFCO a party to the closing instructions with AmeriTitle. Generally, attorney fees are not available to the prevailing party under the commercial transaction prong of Idaho Code § 12-120(3), unless the commercial transaction is between the parties to the litigation. *Harris, Inc. v. Foxhollow Const. & Trucking*, 151 Idaho 761, 778, 264 P.3d 400, 417 (2011). However, even where no commercial transaction occurs between the parties, we have allowed attorney fees to a prevailing party where the losing party has alleged a commercial transaction between the parties. *Garner v. Povey*, 151 Idaho 462, 470, 259 P.3d 608, 616 (2011) ("allegations in the complaint that the parties entered into a commercial transaction

11

and that the complaining party is entitled to recover based upon that transaction, are sufficient to trigger the application of I.C. § 12-120(3)). In its second amended complaint, DAFCO alleged that "the subject of this litigation is a commercial transaction and Plaintiff's (sic) are entitled to attorney fees and costs pursuant to Idaho Code § 12-120(3)." In its opening brief on appeal, DAFCO asserts that "[t]he transaction in question is clearly a commercial transaction," entitling it to attorney fees under I.C. § 12-120(3). Because Stewart and AmeriTitle prevailed on this appeal, they are entitled to their fees under I.C. § 12-120(3).

## V.
## CONCLUSION

For the above reasons, we affirm the judgment of the district court and award costs and attorney fees to AmeriTitle and Stewart.

Chief Justice BURDICK, and Justices EISMANN and HORTON CONCUR.